# Willis et al., Appellants, *v.* Pittsburg Railways Company.

*Railroads—Charter powers—Steam railroads and electric passenger railways—Connecting line—Right of lessee.*

A corporation operating, under leases and with ample charter powers, the lines of a steam railroad company and an electric street railway company will not be restrained at the instance of a township from constructing and operating a connecting line between the two over a township road, where so far as the construction of the tracks is involved the lessee company has gone no further than its lessor could have gone, and where it appears that the railway existed before the township road.

Argued Oct. 19, 1911. Appeal, No. 125, Oct. T., 1911, by plaintiffs, from decree of. C. P. No. 1, Allegheny Co., June T., 1906, No. 821, refusing injunction in suit of A. H. Willis, John Mathias, Adam Spiegel, Philip Anderson, Harry Nix and Otto Hess, constituting the Board of Commissioners of Baldwin Township, *v.* Pittsburg Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction. MACFARLANE, J., found the following facts:

The plaintiffs constitute the board of township commissioners of the township of Baldwin in said county, Baldwin township being a township of the first class, in which the corporate power is vested in the plaintiffs.

The defendant is a corporation incorporated under the special act of general assembly of the commonwealth of Pennsylvania, entitled "An Act to Incorporate the Surety Contract Company," approved May 25, 1871, P. L. 1170, and engaged, inter alia, in the maintenance and operation of lines of passenger railway and a railroad in the township of Baldwin and elsewhere. By subsequent changes

of name, the Surety Contract Company became Pittsburg Railways Company. Several years prior to the defendant's operations in Baldwin township, it had accepted the constitution of Pennsylvania.

The Pittsburg and Castle Shannon Railroad Company was organized as a steam railroad under the general railroad act of April 4, 1868, and possesses such powers as a common carrier has conferred by said act of assembly and other acts of assembly relating to railroads. It was incorporated about the year 1871 and began operations as a carrier soon after its incorporation. On August 25, 1905, the defendant acquired by lease the Pittsburg and Castle Shannon Railroad. Prior to the lease, the Pittsburg and Castle Shannon Railroad was always operated by steam power for its passenger and freight trains, and the defendant continued this method of operation until some time after the filing of this bill. It has since then gradually changed its motive power, and at the present time the greater part of its passenger and freight cars are propelled by electricity. The width between the rails of the track in use was forty inches, and that track is still maintained and used by the defendant for carrying freight, principally coal. Additional rails have been laid on either side of the old track rails, the gauge of this additional track being the same as the gauge of the defendant's street railway lines. The railroad extends from a point on East Carson street of the city of Pittsburg to a point in Scott township; the total length of the road does not exceed seven miles.

The defendant is also lessee of certain passenger railway companies incorporated under the general street railway Act of May 14, 1889, P. L. 211; one of said companies or lines is known as the "Charleroi line" and the other the "Canonsburg line." The former passes through Baldwin township.

Shortly before the filing of this bill, but prior to May 6, 1909, the defendant caused the Castle Shannon Railroad and the Charleroi (passenger railway) line to be physically

connected at a point in the village of Castle Shannon of Baldwin township by projecting a spur of the Pittsburg and Castle Shannon Railroad to a point of connection with the Charleroi line.   Said spur or connecting link was made longitudinally over a public highway along which the railroad company had reserved an easement of way. The history of said spur track and of said reserved easement and the character of said connection are as follows:

On June 14, 1883, the Pittsburg and Castle Shannon Railroad Company was the owner of a large tract of land situate in Baldwin township, Allegheny county, Pennsylvania, and on or about said June 14, 1883, the said Pittsburg and Castle Shannon Railroad Company laid out upon said tract of land a plan of lots, acknowledged June 14, 1883, and recorded July 25, 1883, in Plan Book, vol. 7, page 32, in the recorder's office of Allegheny county, Pennsylvania, which said plan is by reference made a part hereof.   In and upon said plan Railroad street was laid out to the width of 100 feet, and upon said Railroad street there was then located and maintained and there was shown on said plan an extension or branch of said Pittsburg and Castle Shannon Railroad.   Said extension or branch connected with the main line of said Pittsburg and Castle Shannon Railroad with the Pittsburg Southern Railroad, which said Pittsburg Southern Railroad was then located upon a part of Railroad street aforesaid, all of which will more fully appear by reference to said plan. Said Pittsburg Southern Railroad was subsequently abandoned and the tracks thereof removed, but the said branch of the Pittsburg and Castle Shannon Railroad has since 1883 been maintained and operated on Railroad street. At the time of the making of said lease from the Pittsburg and Castle Shannon Railroad Company to the Pittsburg Railways Company, said spur or branch tracks upon Railroad street extended to within less than ten feet of the rails of the said Charleroi line, which occupies in passing through said plan substantially the same location as was occupied by the said Pittsburg Southern Railroad.

The dedication of Railroad street by said Pittsburg and Castle Shannon Railroad Company in said plan of lots was subject to the reserved right of said Pittsburg and Castle Shannon Railroad Company to maintain said branch or extension upon Railroad street aforesaid, and the township of Baldwin and the purchasers of lots in said plan acquired their right to Railroad street subject to said reserved right of said Pittsburg and Castle Shannon Railroad Company, its successors and assigns. The said branch or extension was located upon the said Railroad street at a considerable height above the grade of the traveled way thereof, and that part of Railroad street which is and has been occupied by the tracks of said branch or extension is not now and never has been used as a part of the traveled roadway by vehicles or pedestrians. The defendant has constructed the tracks of said branch or extension to conform with the gauge of the tracks of the said Charleroi line, but the said tracks, ties, embankments and slopes of said branch or extension do not and will not occupy more of Railroad street than have been occupied since said plan of lots was laid out by the tracks, ties, embankments and slopes of said branch, and the defendant has not encroached and has shown no intention to encroach upon the traveled roadway of Railroad street, as the same has been maintained since said plan of lots was laid out.

At the time the bill was filed, the defendant had not used said connecting link between the railroad and street railway lines as a common carrier, but was using same for the purpose of work trains and construction material exclusively, but intended (that upon the completion of certain work then in progress) to interchange traffic between the tracks or lines of the railroad and the passenger railway companies. The defendant now interchanges traffic, both passenger and freight, freely between the railroad and the railway over the said connecting link; the passenger and freight cars of the Charleroi line passing over the Pittsburg and Castle Shannon Railroad and vice versa.

The consent of the commissioners of Baldwin township was not sought nor obtained for the connection of the tracks, nor for the interchange of traffic, whether passenger or freight, neither by this defendant nor either of the lessor companies.

The court stated the following conclusions of law:

1. Defendant, by its charter, is expressly given the power to connect the Pittsburg and Castle Shannon Railroad and the Pittsburg and Charleroi Street Railway, these being "works" of defendant company.

2. Section 8 of the Act of June 7, 1901, P. L. 514, is unconstitutional and void, because the subject-matter thereof is not clearly expressed in the title of said act as required by sec. 3 of art. III of the constitution of Pennsylvania.

3. Although the defendant has accepted the constitution of Pennsylvania, there is nothing in that constitution or in the valid laws passed subsequent to the incorporation of the defendant which impairs in any way the defendant's power to connect its two "works" as aforesaid.

4. The conditions and limitations stated in the Act of May 6, 1909, P. L. 458, do not affect or impair the powers of the defendant in connecting its said "works," because:

1. The connection in question was made prior to the passage of that act.

2. The defendant derives its powers from its charter, and is not controlled by the conditions on which similar powers are granted to other companies.

3. Said act of 1909 relates to connections made by distinct companies, and not to a connection made by one company between two of its own properties.

5. The bill should be dismissed.

6. The plaintiffs should pay the costs of this case.

MACFARLANE, J., filed the following opinion dissolving the preliminary injunction:

The case of Kaufman v. Pittsburg and Castle Shannon

R. R. Co., 217 Pa. 599, renders discussion of the corporate powers of the defendant company unnecessary. It is not limited by the restrictions of the general railroad act. So far as the general powers given in its charter are concerned it looks to the act of its incorporation, not to the general acts. It therefore had a right to take a lease of the Castle Shannon Railroad and to operate it, although it was not connecting with its other lines. It has a right to connect the Charleroi line, a passenger railway leased to and operated by it, with the Castle Shannon, a railroad organized under the general railroad act. That is to say, it has the corporate power under its charter. As the lessee of the Castle Shannon it may lay its tracks wherever that company could, and the latter in laying out its plan of lots dedicated to the purchasers the streets shown upon the plan, subject to the easement of the railroad shown thereon. The lines of track were there connecting with those of the Pittsburg and Southern Railroad, and it appears that for some years they were so physically laid and connecting. The Castle Shannon had a right of way or easement to the point where its tracks have been recently laid, to the junction with the Charleroi line. If the adjoining ground is now a township road by reason of its having been worked by the township authorities, such adoption was subject to the right of way. The defendant is relaying and rehabilitating the portion of the track extending to a point about ten feet from the junction point, and the only question is as to its right to lay the intervening tracks and to operate its cars over it and to transport over it and the rest of the Castle Shannon lines the cars received from the Charleroi line. So far as the construction of the tracks is involved the defendant has gone no farther than its lessor could have done.

The township has no rights in the premises based upon its control of the highway, for, as we have seen, the railway existed before the highway.

It is true the defendant company is subject to the police power of the state as expressed in its constitution and stat-

utes and to the regulation of the operation of its street railways by reasonable regulations of municipalities under their general powers, Erie v. Erie Traction Co., 222 Pa. 43, and it is earnestly contended that the constitution and certain statutes require the consent of the township authorities before the proposed action is taken.

Section 9, art. XVII, of the constitution reads, "No street passenger railway shall be constructed within the limits of any city, borough or township without the consent of the local authorities." This is intended as a safeguard to the rights of municipalities against the encroachments of companies organized to construct street railways in the first instance, and is a very wise provision, because it would be intolerable for municipalities to be invaded by a public service corporation of this character so closely connected with the everyday life of their people, without having anything to say about it: Erie v. Erie Traction Co., 222 Pa. 43. The doubt was expressed, however, in that case whether the purpose was to protect against more than the construction and whether it included the operation. The Castle Shannon lines cannot be operated other than as a railroad. Heretofore the road has been operated by steam, but its proposed operation by electricity does not change its character: Howley v. Central Valley R. R. Co., 213 Pa. 36. When the defendant company receives cars on and transports them over the Castle Shannon road its power, as we have indicated, is that of a transporting company operating a railroad, not a street passenger railway. Probably it will not be possible for the observer to see any change in the manner of propulsion when the car leaves one line for another, but we are examining the source of the corporate power and not the physical conditions. The railroad is now in the township. Its line at one time extended over the whole of the route now traversed in the recent change. There is no evidence subject to warrant a conclusion that any of the line was abandoned. It is not seeking any further use of the highway than it already possesses. It is not seeking any new franchise

and, most important, it is the lessee of a railroad, not of a passenger railway.

In the operation of the Charleroi line it is proposed to receive passenger cars from the Castle Shannon road and to transport them over its lines.  So far as appears the Charleroi road is in the township by consent, at least no question is raised as to the right of the defendant to operate it, and the question of interchange of cars turns upon the right over the part of the tracks recently constructed.

The Acts of May 21, 1895, P. L. 93, and of May 14, 1889, P. L. 211, enact the constitutional prohibition and need no discussion.

Section 8 of the Act of June 7, 1901, P. L. 514, provides that "no street railway company . . . . shall be authorized or permitted to connect its tracks with the tracks of any railroad company incorporated under the law of this state for the transportation of both passengers and freight, nor shall the interchange of cars and continuous movement thereof between and over the tracks of such passenger railway company and such railroad company be authorized or permitted."  The provisions of this section are not expressly recited in the title.  It is entitled and is in fact an amendment of the act of 1889.  Section 8 may be germane to the original act, but the title contains a catalogue of the provisions of the act reciting everything but this section.  This is misleading, and the section is unconstitutional: Philadelphia v. Market Co., 161 Pa. 522, and cases cited.

The whole case as presented does not call for the issuance of a preliminary injunction.

Now, June 10, 1909, the preliminary injunction heretofore issued is dissolved.

Upon final hearing the court dismissed the plaintiff's bill.

*Error assigned* was in dismissing plaintiff's bill.

*Andrew G. Smith*, with him *Sylvester J. Snee*, for appellant.—In so far as the defendant operates the railroad and

the street railway it does so entirely by virtue of the powers of the lessor companies. There appears to be no conflict among the decisions of the courts in the several states upon the principle of law which limits the powers of a lessee to the rights of the lessor, whether the persons be natural or artificial: Pennsylvania Railroad Co. v. Sly, 65 Pa. 205; McMillan v. Railroad Co., 16 Mich. 89; Hibbs v. Railroad Co., 39 Ia. 340; Woodruff v. Erie Railway Co., 93 N. Y. 609.

Charters are to be construed strictly against corporations and in favor of the public: Parker v. Great Western Ry. Co., 49 Eng. Com. L. Rep. (7 Man. & Gran.) 253; Penna. R. R. Co.'s App., 93 Pa. 150.

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, for appellee, cited: Pittsburg Railways Co. v. Pittsburg, 226 Pa. 498; Kaufman v. P. & C. S. R. R. Co., 217 Pa. 599.

PER CURIAM, January 2, 1912:

The decree is affirmed on the findings of fact and of law and the opinion of the court dissolving the preliminary injunction.